UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LAUREL ROWE,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAELS STORES, INC.,<br><br>    Defendant. | Case No. 5:15-cv-01592-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY ADJUDICATION; DENYING MOTION FOR CLASS CERTIFICATION WITHOUT PREJUDICE; SETTING TRIAL SETTING CONFERENCE**<br><br>Re: Dkt. Nos. 26, 44 |

## I. INTRODUCTION

Plaintiff Laurel Rowe ("Rowe") initiated this putative class action against her former employer, Defendant Michaels Stores, Inc. ("Michaels"), for various California Labor Code violations including failure to pay minimum wages and overtime, failure to provide rest breaks and meal periods, failure to provide accurate wage statements, and failure to pay all wages owed upon termination. Rowe also asserts claims for penalties pursuant to Labor Code §558, remedies under California's Private Attorneys General Act of 2004, and for unlawful competition in violation of Business and Professions Code §§17200 et seq.

Michaels moves for summary adjudication as to all claims except claims 3 (relating to rest breaks) and 4 (relating to meal periods) to the extent those claims are based on unpaid wages.

Michaels contends that Rowe has no concrete evidence that her time records were improperly edited or that she was underpaid as a result. The Court finds it appropriate to take the motion under submission for decision without oral argument pursuant to Civil Local Rule 7-1(b). For the reasons set forth below, Michaels' motion is GRANTED in part and DENIED in part.

## II. BACKGROUND

Michaels operates arts and crafts retail stores. Rowe worked at a Michaels store in Gilroy, California from April 2013 through August 2014 as a Customer Experience Manager for Events and was responsible for managing the store's cashiers, among other duties. Rowe was designated as the store's Manager on Duty ("MOD") once or twice a week. As MOD, Rowe was responsible for all of the store employees, including making sure that they were clocked in while working and took proper meal breaks.

Michaels uses an electronic time keeping system called Workbrain. All work time must be entered into Workbrain before payroll can be processed. Michaels requires the employees in the Gilroy store to record their work time by punching in and out on a time clock. If, however, an employee attempts to punch in before a scheduled start time, the time clock does not record the time punch, and the employee needs to submit an edit sheet.

Michaels' store "Support Specialists" input the edit sheets into Workbrain. Employees generally sign their initials next to proposed edits on an edit sheet. Sometimes the Support Specialist would speak to an employee about a proposed edit instead. If an employee was not available to review the proposed edit when payroll needed to be processed the Support Specialist would input the edit based on the scheduled work time.

While employed by Michaels, Rowe worked 327 shifts. There are no edits for 188 of the 327 shifts, and Rowe acknowledges that Michaels paid her correctly for these shifts. For an additional 80 shifts, Rowe initialed the edit on the edit sheet and Rowe acknowledges that Michaels paid her properly for these shifts.

As for the remaining 59 shifts, there are edits to Rowe's time punch records that she did

Case No.: 5:15-cv-01592-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY ADJUDICATION; DENYING MOTION FOR CLASS CERTIFICATION WITHOUT PREJUDICE

2

not initial. Rowe does not know if these un-initialed edits are accurate and "suppose[s]" that they could be accurate. Rowe Dep. at 200:7-201:2. For 43 of the 59 shifts, the edits consist of adding a time punch where no punch existed, either at the beginning or end of a shift, or at the beginning or end of a meal break. For another 3 of the 59 shifts, Rowe did not enter any time punches at all, so all her punches on these shifts were added by edit. For another 5 of the 59 shifts, the edits consisted of changes to time punches made by Rowe: 4 of the 5 edits resulted in greater pay for Rowe, and the other edit was made to conform to the time Rowe was scheduled to work that day. The final eight of the 59 remaining shift edits involved the addition of an "in" and "out" punch for a meal break.

Michaels moves for summary adjudication on several claims, asserting that Rowe has no evidence that any of the edits to the 59 shifts were inaccurate or improper. In opposition, Rowe contends that she was not paid for time she worked off the clock during meal breaks, was not paid for time she worked outside of her scheduled work hours, and was not paid break premiums.

### III. STANDARDS

A motion for summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). The moving party bears the initial burden of informing the Court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the moving party meets this initial burden, the burden shifts to the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); Celotex, 477 U.S. at 324. The court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324. However, the mere suggestion that facts are in controversy, as well as conclusory or speculative

Case No.: 5:15-cv-01592-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY ADJUDICATION; DENYING MOTION FOR CLASS CERTIFICATION WITHOUT PREJUDICE

3

testimony in affidavits and moving papers, is not sufficient to defeat summary judgment. See Thornhill Publishing Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979). The non-moving party must come forward with admissible evidence. Fed. R. Civ. P. 56(c); see also, Hal Roach Studios, Inc. v. Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990).

A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. Anderson, 477 U.S. 242, 248-49, 106 S.Ct. 2505, 91 L.Ed.2d 202; Barlow v. Ground, 943 F.2d 1132, 1134-36 (9th Cir. 1991). Conversely, summary judgment must be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

## IV. DISCUSSION

### A. Alleged Spoliation of Evidence

Rowe requests that the Court draw an adverse inference against Michaels as a sanction for alleged spoliation of evidence, specifically edit sheets. According to former Michaels employee Vincent Ruvalcaba ("Ruvalcaba"), he was asked to send copies of time and edit sheets from the Gilroy store to Michaels' corporate office. When he retrieved them from the store, he noticed that many of the edit sheets were missing, and that others were noticeably altered. Ruvalcaba Decl., ¶10. "For instance, several of the time clock edit requests had been cut up, folded up and taped together with other sheets." Id. Ruvalcaba thought another Michaels employee, Eden Portugal ("Portugal"), had altered the edit sheets by cutting them into pieces and taping them back together. Id. During deposition, however, Ruvalcaba could not recall how many edits sheets appeared to be missing, the dates for which edits sheets appeared to be missing, when the edit sheets went missing, or why they went missing. Ruvalcaba testified that three or four edit sheets had been cut and taped to another time sheet, but did not know whether the cutting and taping covered any information. Ruvalcaba also testified that he had no idea whether Portugal cut or taped the

Case No.: 5:15-cv-01592-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY ADJUDICATION; DENYING MOTION FOR CLASS CERTIFICATION WITHOUT PREJUDICE

4

documents. This evidence is insufficient to justify any sanction for alleged spoliation as explained below.

Spoliation "refers to the destruction or material alteration of evidence or to the failure to preserve properly for another's use evidence in pending or reasonably foreseeable litigation." Silvestri v. Gen. Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001) (citing West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2nd Cir. 1999)). In general, "[t]rial courts have widely adopted the Second Circuit's three-part test" to determine when the use of adverse inferences as sanctions is appropriate. Apple, Inc. v. Samsung Elecs. Co., 888 F.Supp.2d 976, 997 (N.D. Cal. 2012). The Second Circuit's test provides that "a party seeking an adverse inference instruction based on the destruction of evidence must establish[:] (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002) (quoting Byrnie v. Town of Cromwell, 243 F.3d 93, 107-12 (2d Cir. 2001)).

Ruvalcaba's declaration and testimony are too vague to establish destruction of evidence. The three or four edit sheets that have been cut and taped, which were produced during discovery, do not appear to have been materially altered because the data is unobscured. Further, Ruvalcaba's declaration and testimony are insufficient to satisfy the Second Circuit's three-part test: it is unclear when the edit sheets allegedly went missing or were altered; there is no evidence from which to infer Michaels had a culpable state of mind; and Rowe has not demonstrated the relevance of the allegedly missing or altered edit sheets. Accordingly, Rowe's request for the imposition of a sanction against Michaels for the alleged spoliation of evidence is denied.

B. Evidentiary Objections

Rowe's evidentiary objections to the declaration of former Michaels employee Eden Portugal ("Portugal"), ¶¶3-13 are overruled. Portugal is the store manager for the Michaels store

Case No.: 5:15-cv-01592-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY ADJUDICATION; DENYING MOTION FOR CLASS CERTIFICATION WITHOUT PREJUDICE

5

in Gilroy. Her description of Michaels' time keeping policies is admissible pursuant to Fed.R.Evid. 602.

Rowe's evidentiary objections to the declaration of Michaels' counsel, Jeremy Bollinger, ¶¶2-13 summarizing the contents of edit sheets are overruled. The edit sheets, which were submitted by Michaels' Vice President of Field Human Resources, Doug Marker, are admissible business records pursuant to Fed.R.Evid. 803. Summary evidence prepared by counsel is admissible pursuant to Fed.R.Civ.Evid. 1006. Moreover, Rowe's evidentiary objections are, in part, inconsistent with Rowe's Separate Statement of Facts, in which Rowe designates as undisputed facts set forth in Bollinger Declaration, ¶¶4-9. Rowe's evidentiary objection to Bollinger Declaration ¶15, regarding Rowe's letter to the Labor and Workforce Development Agency is also overruled; Rowe submitted the same letter for the court's consideration.

C. Rowe's First And Second Causes of Action for Unpaid Wages

The focus of Rowe's claims for unpaid minimum wages and unpaid overtime wages are the shifts for April 9, 2014, May 1, 2014, July 19, 2014, and August 12, 2014, for which Rowe did not clock out for a meal break, but her time was edited to show a break even though she did not fill out an edit request. Plaintiff's Opposition, pp. 9-10. Rowe states in her declaration that there were "many times when I would have to work through meal breaks." Decl. of Laurel Rowe, ¶7. Rowe contends that the edits to the four shifts constitute "time shaving" that deprived her of 30 minutes of compensable working time each shift.

Rowe also points to the shifts she worked on April 25, 2014, May 22, 2014, July 12, 2014, August 12, 2014, August 16, 2014, and August 19, 2014, for which she did not record a time punch at the beginning of her shift, but her time was later edited to show that she clocked in at her scheduled start time, even though she never filled out an edit request for these six shifts. Id. at p.10. Rowe contends that oftentimes she was required to start working before her scheduled shift. In a declaration, Rowe explains:

> 6. As one example . . . I was oftentimes [sic] required to work at Kids Club in the mornings. In order to begin my duties for Kids Club, I was required to begin work at 9:30 a.m. My job duties in this capacity would require me to get projects ready for the classes in advance of the time which they were scheduled to begin. Routinely, when I was supposed to work for Kids Club, I recall being scheduled by my store manager for my normal shift with a start time of either 10:00 a.m. or 10:30 a.m. When this happened, I would not be able to clock in for my shift when I arrived at the store, because I was not yet scheduled to start for the day and arrived before my scheduled start time. I would, in those instances, begin my job without being able to clock in, and therefore, work significant amounts of time off the clock and outside of my scheduled work hours. The time clock would not let me clock in early, which was why this was a problem. Similarly, there were also many instances where I was required to work later than the time for which I was scheduled.

Decl. of Laurel Rowe, ¶6. In light of the limitation in Michaels' time record keeping system that prevented employees from clocking in prior to their scheduled start time, Rowe contends that it is reasonable to infer that she was underpaid for the days she needed to start preparing before her scheduled shift, such as when she was assigned to work at Kids Club.

As an initial matter, Rowe's declaration contradicts her prior testimony regarding working outside her scheduled hours. During deposition, Rowe confirmed that she was not claiming to have performed work that was unrecorded. Rowe Depo. at 148:6-12, 150:4-7. A party cannot create an issue of fact by an affidavit contradicting her prior deposition testimony. Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991). Moreover, the evidence relied upon by Rowe is insufficient to raise a genuine issue of fact for trial. Rowe conceded during her deposition that she doesn't know exactly what the edits were for or why they happened. Rowe Depo. at 187:20-21. Nor does Rowe have any reason to believe that store managers Ms. Portugal, Ms. Santos, or Mr. Osmus improperly edited her time records or instructed somebody else to do so. Id. at 187:10-13, 188:5-18. Rowe also testified that she has no "solid, concrete" evidence that someone added a meal break for shifts when she did not take a break. Rowe also testified that she did not think the district manager, to whom the store managers reported, had any involvement in editing her time records. Id. at 187:7-9. Further, Rowe acknowledged that the edits she did not

Case No.: 5:15-cv-01592-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY ADJUDICATION; DENYING MOTION FOR CLASS CERTIFICATION WITHOUT PREJUDICE

7

authorize could have been accurate. Id. at 200:7-201:2. Rowe also testified that she has no documents that reflect any discrepancies in her time records, and that she is unable to estimate the amount by which Michaels allegedly underpaid her. Id. at 203:1-6, 204:8-11.

Rowe is able to recall only one shift, either on July 12 or August 12, during which she was required to work through a meal break. Rowe Depo. at 182-183, 203-204. This single shift, however, is insufficient to raise a triable issue as well. To prevail on a claim for "off-the-clock" work, a plaintiff must demonstrate knowledge on the part of the employer of the "off-the-clock" work. See Morillion v. Royal Packing Co., 22 Cal.4th 575, 585, 94 Cal.Rptr.2d 3, 995 P.2d 139 (2000); White v. Starbucks Corp., 497 F.Supp.2d 1080, 1083 (N.D. Cal.2007) ("[t]o prevail on his off-the-clock claim, [plaintiff] must prove that Starbucks had actual or constructive knowledge of his alleged off-the-clock work."); Brinker Rest. Corp. v. Superior Court, 53 Cal.4th 1004, 1051-52 (2012) (liability contingent on proof that Brinker knew or should have known off-the-clock work was occurring). Rowe has not presented evidence to show that Michaels knew or had reason to know of Rowe's alleged off-the-clock work. Instead, the evidence shows that Michaels maintains a written policy expressly prohibiting "working off the clock," and also requires that all time worked "must be accounted for, even if it is outside your scheduled shift including overtime." See Michaels Associate Handbook attached as Exhibit A to Bollinger Decl.; see also Michaels Standard Operating Procedure 109 Time Clock Procedures-Hourly attached as Exhibit 12 to Rowe Deposition ("no associate is authorized to work 'off the clock' in the store or at home without being paid"). Michaels' written policy also explicitly instructed employees "to follow meal and rest breaks per state law." Id. Michaels' written policy also explicitly warned that "[w]orking unauthorized overtime is not permitted." Id. Michaels also instructed employees to notify their supervisor or Human Resources Representative if an employee suspected time clock/sheet fraud. Id. Rowe understood these written policies, and indeed at times was responsible for making sure other employees clocked in when they were working, and took proper meal and rest breaks

Case No.: 5:15-cv-01592-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY ADJUDICATION; DENYING MOTION FOR CLASS CERTIFICATION WITHOUT PREJUDICE

8

consistent with Michaels' written policies. Id. at 61:162:2. Further, Rowe concedes that no Michaels employee ever told her to miss her break. Id. at 119:22-24. Rowe also acknowledges that no Michaels employee ever criticized or disciplined her, or any other employees, for working overtime. Thus, there is no evidence to show that the Gilroy store adopted, encouraged, or enforced any practice inconsistent with Michaels' written policy.

Instead, the evidence shows that certain managers filled in missing punches, based upon either the employee's scheduled shift or the employee's verification of time worked, in order to run payroll. See Decl. of Eden Portugal; Decl. of Lora McLellan. In the absence of any proof that Michaels had actual or constructive knowledge of Rowe's off-the-clock work, Michaels is entitled to summary adjudication as to Rowe's first and second causes of action.[1] See White, supra; Brinker, supra; Porch v. Masterfoods, USA, Inc., 685 F.Supp.2d 1058 (C.D. Cal. 2008) (employer entitled to summary judgment because employer did not have actual or constructive notice that employee was working off-the-clock).

D. Rowe's Fifth, Sixth, Eighth and Ninth Causes of Action

Michaels seeks summary adjudication on Rowe's fifth, sixth, eighth and ninth causes of action to the extent they are based on unpaid wages. Rowe does not dispute that the sixth, eighth and ninth causes of action are derivative of her claims for unpaid wages. Accordingly, Michaels' motion for summary adjudication on Rowe's sixth, eighth and ninth causes of action is granted to the extent those claims are based on unpaid wages.

Rowe contends, however, that the fifth cause of action for failure to provide accurate wage statements in violation of Labor Code §226 is not derivative of her underlying claim for unpaid wages. Rowe reasons that under Pena v. Taylor Farms Pacific, Inc., 2014 WL 1665231 at *9

---

[1] Because of the lack of proof showing Michaels' knowledge of Rowe's off-the-clock work, the Court finds it unnecessary to consider Rowe's argument that Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88 (1946) requires placing the burden of proof on Michaels to produce evidence of the "precise amount of work performed" or otherwise negate a plaintiff's claim for damages.

Case No.: 5:15-cv-01592-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY ADJUDICATION; DENYING MOTION FOR CLASS CERTIFICATION WITHOUT PREJUDICE

9

(E.D. Cal. 2014), accurate payment of inaccurately recorded hours violates Section 226, and therefore her fifth cause of action remains viable even if she was not underpaid because her statement of wages were based upon inaccurate time punches.

Section 226(a) requires employers to provide accurate itemized statements of wages to their employees that contain certain statutorily mandated information. "An employer is only liable for damages as a result of failing to furnish conforming wage statements, however, to employees that 'suffer[] injury as a result of a knowing and intentional failure by an employer to comply" with Section 226. Cal. Labor Code §226(e). Therefore, a plaintiff seeking damages under Section 226 must establish (1) that a defendant's wage statement violated one of the enumerated requirements in section 226(a), (2) that the violation was knowing and intentional, and (3) a resulting injury. Willner v. Manpower, Inc., 35 F.Supp.3d 1116 (N.D. Cal. 2014).

As previously discussed, Rowe has not presented evidence to show that any of her time records were inaccurate, except for one time shift. Furthermore, there is insufficient evidence upon which a reasonable jury could find that Michaels knowingly and intentionally violated Section 226. Instead, the evidence shows that Michaels' managers attempted to ensure the accuracy of time punches. See Portugal Decl., ¶5; McLellan Decl., ¶¶10-12; Carbone Decl., ¶¶6-8; Rael Tr., 16:4-17:4, 20:9-21:1. Accordingly, Michaels is entitled to summary adjudication on the fifth cause of action to the extent it is based on unpaid wages.

E.  Rowe's Eighth Cause of Action for Remedies under Labor Code §2698 et seq.

Michaels also seeks dismissal of the eighth cause of action for failure to exhaust administrative remedies as required by Labor Code §2699.3(a)(1). Michaels acknowledges that Rowe sent written notice to the Labor and Workforce Development Agency ("LWDA") regarding the substance of her claims, but contends that the written notice did not provide sufficient information to enable the LWDA to make an informed decision about whether to investigate because the letter describes the group of affected employees as "Pest Control Technicians" employed by Michaels.

Case No.: 5:15-cv-01592-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY ADJUDICATION; DENYING MOTION FOR CLASS CERTIFICATION WITHOUT PREJUDICE

10

Put in context, it is plainly evident that the reference to "Pest Control Technicians" is a typographical error, and that the substance of Rowe's written notice to the LWDA otherwise accurately identifies the parties and include the factual and legal bases for the claims in this lawsuit. Moreover, Rowe submitted a draft of her state court complaint with her written notice, which clearly identified the parties and the factual and legal bases of her claims. Accordingly, the Court rejects Michaels' assertion that Rowe failed to exhaust administrative remedies.

## V. CONCLUSION

Defendant Michaels' motion for summary adjudication on Rowe's Eighth Cause of Action for failure to exhaust administrative remedies is DENIED. Michaels' motion for summary adjudication is GRANTED as to the following claims: First Cause of Action for failure to pay unpaid minimum wages; Second Cause of Action for unpaid overtime wages; Fifth Cause of Action for inaccurate pay statements to the extent it is based on unpaid wages; Sixth Cause of Action for Labor Code §203 penalties to the extent it is based on unpaid wages; Seventh Cause of Action[2]; Eighth Cause of Action for remedies under the Private Attorneys General Act to the extent it is based on unpaid wages; and Ninth Cause of Action for violation of California's Business and Professions Code §§17200 et seq. to the extent it is based on unpaid wages.

Because the Court's rulings on Michaels' motion for summary adjudication may have a substantial impact on class certification issues, Rowe's pending motion for class certification is DENIED without prejudice. Rowe may, if appropriate, renew her motion for class certification if there remains at least one claim for which she is able to satisfy the requirements of Rule 23, Fed.R.Civ.P.

//

//

//

---

[2] Rowe does not dispute Michaels' motion for summary adjudication on the Seventh Cause of Action.

Case No.: 5:15-cv-01592-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY ADJUDICATION; DENYING MOTION FOR CLASS CERTIFICATION WITHOUT PREJUDICE

11

The Court will conduct a trial setting conference on November 2, 2017 at 11:00 a.m. The parties shall file a joint trial setting conference statement no later than October 23, 2017.

**IT IS SO ORDERED.**

Dated: September 25, 2017

_____
EDWARD J. DAVILA
United States District Judge

Case No.: 5:15-cv-01592-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY ADJUDICATION; DENYING MOTION FOR CLASS CERTIFICATION WITHOUT PREJUDICE

12